William A. Levin (SBN 98592)
Angela J. Nehmens (SBN 309433)
**LEVIN SIMES ABRAMS LLP**
1700 Montgomery Street, Suite 250
San Francisco, California 94111
Telephone: (415) 426-3000
Facsimile: (415) 426-3001
wlevin@levinsimes.com
anehmens@levinsimes.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA
# SACRAMENTO DIVISION

| | |
|---|---|
| GIORGIO QUINIONES,<br><br>*Plaintiff*,<br><br>vs.<br><br>LG CHEM, LTD., and the FIRST DOE through FIFTIETH DOE, inclusive,<br><br>*Defendants*. | CIVIL ACTION NO. _____<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**<br><br>1. STRICT LIABILITY<br>2. NEGLIGENCE<br>3. BREACH OF IMPLIED WARRANTY<br>4. VIOLATION OF UNFAIR COMPETITION LAW<br><br>And Prayer for PUNITIVE DAMAGES |

## COMPLAINT

COMES NOW, Plaintiff, Giorgio Quiniones, by and through his attorneys of record, and for causes of action against the above-named Defendants complains, alleges, and states as follows:

**I.  PARTIES**

1. Plaintiff Giorgio Quiniones was and is a resident of Tracy, California.

2.Defendant LG Chem Ltd. ("LG Korea") is a multi-national chemical-based corporation founded in Korea in 1947, and organized under the laws of the Republic of Korea. It boasts of leading the global market with its manufacture and sale of lithium-ion batteries, such as the rechargeable 18650 lithium-ion batteries (hereinafter "the Subject Batteries") at issue in this case.

3.LG Korea does not maintain any physical presence in the United States. It has a network of wholly owned subsidiaries in and throughout the United States that work together to sell various products nationwide.

4.LG Korea designed, manufactured, distributed, sold, and/or otherwise placed the Subject Batteries that injured Plaintiff into the stream of commerce.

5. The instant case involves the explosion of a lithium-ion battery and the Subject Battery, and other similar/identical 18650 lithium-ion batteries, which were advertised, marketed, sold, distributed, and placed into the stream of commerce through the engagement of LG Korea and one or more distributors and/or retailers who sell and distribute LG products, including the Subject Battery and similar batteries to consumers.

6.LG Korea sells lithium-ion batteries to Chinese companies known to LG Korea to be distributors of e-cigarette and personal vaping products, including the Subject Battery. LG Korea knows the Chinese entities to whom it sells its products, including lithium-ion 18650 batteries, distribute said products to e-cigarette and vaping retailers, wholesalers, and distributors in the United States.

7.Plaintiff is informed and believes and, on that basis alleges that each Defendant named herein as DOES 1-50 are those persons, corporations, other legal entities, and/or successors-in-interest of any of those entities described above whose wrongful conduct caused or contributed to cause the harms, injuries, and damages to Plaintiff. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1-50m inclusive, and each of them, are unknown to Plaintiff, who hereby sues these defendants by such fictitious names, and will ask leave of this court to amend this Complaint when their true names are ascertained. Plaintiff is informed and believes, and thereon alleges

that each defendant designated as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings herein referred to, and caused injuries and damages proximately thereby to Plaintiff, as alleged herein.

8. Defendant LG Korea and DOES 1-50 shall hereinafter be referred to collectively as "Defendants."

## II.    JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332; the Plaintiff and the Defendants are diverse, and the amount in controversy exceeds $75,000.00

10. This Court has personal jurisdiction over Defendant LG Korea because of its purposeful, continuous, and systematic contacts with California entities and the California market, including, but not limited to the following:

   a. Committing a tortious act within the State of California by selling and delivering defective products to persons, firms, or corporations in this state via its distributors, dealers, wholesalers, and brokers. Such products were used by consumers in California in the ordinary course of commerce and trade;

   b. Conducting and engaging in substantial business and other activities in California by selling products to persons, firms, or corporations in this state via its distributors, wholesalers, dealers, and brokers. Such products were used by consumers in California in the ordinary course of commerce and trade;

   c. Purposefully directing sales of its products, either directly or indirectly, to the State of California with the intent and knowledge that said products would reach and be used by California residents and consumers;

   d. At or about the time Plaintiff was injured, Defendant LG Korea engaged in solicitation activities in California to promote the sale, consumption, use, maintenance, and/or repair of its products;

e. At all pertinent times, LG Korea derived substantial revenue from the sale of its products in the State of California; and

f. Selling products with knowledge or reason to foresee that these products would be shipped in interstate commerce and would reach the market of California users or consumers.

11. Venue is proper in this Court because substantial acts or omissions giving rise to this suit occurred in this District.

### III. FACTS

**E-Cigarettes**

12. E-cigarettes, also known as e-cigs, vapes, vape pens, and mods (customizable, more powerful vaporizers) are battery operated devices that deliver nicotine through flavoring and other chemicals to users in the form of vapor instead of smoke.[1]  They were first patented in 2003 and have been available for sale in the United States since 2007.[2]

13. E-cigarettes are designed to simulate the act of smoking traditional tobacco, allegedly with less of the toxic chemicals produced by the burning of tobacco leaves and other chemicals contained in traditional, combustible cigarettes.[3]  E-cigarettes offer doses of nicotine with a vaporized solution, often referred to as "juice," "e-liquid," or "pods," providing a physical sensation similar to tobacco smoke.

14. Generally, electronic cigarettes operate the same way regardless of the model in that they typically consist of at least three (3) component parts: a tank, a battery that works to heat the juices or e-liquid contained in the tank, and an atomizer that converts the liquid into vapor that the user inhales.

///

///

---

[1] *See generally*, *Electronic Cigarettes*, National Institute on Drug Abuse, Rev. March 2018, available at https://www.drugabuse.gov/publications/drugfacts/electronic-cigarettes-e-cigarettes.
[2] McKenna, L., *Electronic Cigarette Fires and Explosions in the United States 2009-2016*, U.S. Fire administration, July 2017 available at https://www.usfa.fema.gov/downloads/pdf/publications/electronic_cigarettes.pdf.
[3] *See generally*, *Electronic Cigarettes*, National Institute on Drug Abuse, Rev. March 2018, available at https://www.drugabuse.gov/publications/drugfacts/electronic-cigarettes-e-cigarettes.

- 4 -  Plaintiff's Complaint and Demand for Jury Trial

15. E-cigarettes differ from traditional cigarettes in a critical way: the e-cigarette is battery-operated and uses a heating element to produce vapor, and the traditional cigarette has no electronic component. While both products may produce a similar physical sensation, e-cigarettes pose an additional danger - the battery-powered heating element, as well as the battery itself - that can and have caused explosions, fires, and serious injury.

16. E-cigarettes are more dangerous than other products that contain lithium batteries because the e-cigarette is most often designed as a cylindrical device, requiring a lithium-ion battery of a similar shape. When the device malfunctions or fails, the battery can be shot out like a bullet or rocket.[4]

17. At least two deaths have been reported in relation to an exploding e-cigarette.[5]

18. E-cigarettes have become increasingly popular. They have been marketed as smoking-cessation aids[6] and as a healthier alternative to traditional tobacco cigarettes. The selection of products has grown at an extremely rapid rate.[7]

19. Since their introduction into the United States, sales have risen dramatically from approximately $20 million in 2008 to $2.5 billion in 2012. Industry experts predict the e-cigarette industry will become an $85 billion business within a decade and surpass the tobacco industry.[8]

20. In January 2014, there were 466 brands of e-cigarettes and over 7,000 unique e-cigarette juice flavors available for sale.[9]

21. Until recently, e-cigarette marketing has been unfettered and unregulated. Whereas tobacco advertisements have been banned on radio and television for more than 40 years, no such restrictions have been instituted in the e-cigarette arena.

---

[4] United States Fire Administration, *Electronic Cigarette Fires and Explosions*, October 2012, at p. 5.
[5] *See* https://www.washingtonpost.com/health/2019/02/05/vape-pen-kills-man-after-exploding-his-mouth/.
[6] *Id.*
[7] Zhu, S. H., Sun, J. Y., Bonnevie, E., Cummins, S., Gamst, A., Yin, L., & Lee, M. (2014). Four hundred and sixty brands of e-cigarettes and counting: Implications for product regulation. Tobacco Control Act 2014, 23: iii3-iii9.
[8] Clarke, T., *Reports of E-Cigarette Injury Jump Amid Rising Popularity, United States Data Show*, Reuters.com, April 17, 2012.
[9] Zhu, S. H., Sun, J. Y., Bonnevie, E., Cummins, S., Gamst, A., Yin, L., & Lee, M. (2014). Four hundred and sixty brands of e-cigarettes and counting: Implications for product regulation. Tobacco Control Act 2014, 23: iii3-iii9.

Manufacturers, distributors, and sellers of e-cigarettes therefore reach a broader consumer base than the tobacco industry and have the freedom to utilize the same marketing tactics previously employed by big tobacco.  Namely, to tout the supposed health benefits of their products absent scientific and medical data to support such claims; to portray e-cigarette smoking as a harmless pastime on TV, radio, and in print; capitalize on individuals already addicted to nicotine; and/or encourage nicotine newcomers (mainly youths and young adults) to pick up the habit.

22.     Despite advertisements that represent e-cigarettes as a healthier alternative to traditional cigarettes, various articles have concluded that the long-lasting effects of smoking e-cigarette devices are unknown.[10]

23.     In 2017, the United States Fire Administration characterized the "combination of an electronic cigarette and a lithium-ion battery" as a "new and unique hazard" because there is "no analogy among consumer products to the risk of a severe, acute injury presented by an e-cigarette."[11]

**Defendants LG's Knowledge of The Sale and Use of Their Lithium-Ion Batteries with E-Cigarette Devices**

24.     LG Korea does not maintain any physical presence in the United States.  It has a network of distributors and wholly owned subsidiaries in and throughout the United States that work together to sell various products nationwide.

25.      LG Korea is a global supplier of products and touts its global reach, nothing LG "is literally the company leading the chemical industry in Korea.  The company has built the global network for production, sales, and R&D not only in Korea but also in main bases across the world and

---

[10] *See e.g.* National Academies of Sciences, Engineering, and Medicine, *Public Health Consequences of E-Cigarettes*, Washington, DC: The National Academies Press, 2018 (characterizing the use of e-cigarettes on public health as "unknown" and conclusively determining e-cigarette smokers are exposed to potentially toxic substances in addition to nicotine).
[11] McKenna, L., *Electronic Cigarette Fires and Explosions in the United States 2009-2016*, U.S. Fire administration, July 2017.

has provided globally competitive products…LG Chem is committed to becoming a global company…"

26. LG Korea also emphasizes it is the "only chemistry-based company among global battery cell manufacturers [which] has led the world lithium-ion battery market…positioned as a global leader…and ahs secured the battery production capacity as a global player."

27. The regular course and scope of LG Korea's batteries involves the shipping of large quantities of its batteries, both the cylindrical lithium-ion battery at issue here as well

28. Based on information and belief, during at least the years 2012 to the present, LG Korea supplied, sold, shipped, distributed and/or provided directly to consumers and distributors throughout the State of California, thousands (if not millions) of its products, including cylindrical lithium-ion batteries, which were sold for use, and used, in California.

29. Based on information and belief, the regular course and scope of LG Korea's batteries involves the shipping of large quantities of its batteries, both the cylindrical lithium-ion battery at issue here as well. In addition to the authorized LG Korea batteries shipped directly to California, LG Korea also engages, upon information and belief, in a grading process for the various batteries it manufacturers. Upon information and belief, those batteries that fail to achieve a sufficient grade or conform appropriately to standards are not discarded.

30. Instead, based on information and belief, in the interests of profit, LG Chem sells those inferior or nonconforming lithium-ion battery products to other distributors, with LG knowing full well they may be using those batteries for individual electronic or other uses-uses that may not be explicitly authorized, but are certainly permitted by LG Korea in the interest of maintaining its profitability.

31. Upon information and belief, LG Korea ends up with a significant quantity of batteries with cosmetic defects in the wrapper, without a wrapper at all, or with batteries with other types of cosmetic and other defects. Instead of discarding those batteries, LG Korea knowingly sells these

substandard batteries to various distributors throughout the world, who remove the cosmetically defective or missing wrapper, apply their own wrapping, and then sell those batteries for other uses. One of the principal locations to which LG Korea ships its substandard batteries is Shenzhen, China.

32. LG Korea knew and expected that these batteries would then be sold to consumers throughout the world, including California. Based on these two avenues, LG Korea sells large quantities of lithium-ion batteries to the electronic cigarette market in Oregon, which are ultimately purchased by California consumers, including the battery that injured Plaintiff.

33. Despite the significant profit LG Korea garners from its United States based business, it asserts it is not subject to the jurisdiction of any court (whether state or federal) in the United States.

34. Upon information and belief For at least the last six years, it has been well known in the electronic cigarette industry, LG knew that its lithium-ion batteries were being used in connection with electronic cigarettes and were even recommended by multiple online sources for e-cig use.

35. LG lithium-ion batteries can carry a catastrophic risk of explosion to end users. Indeed, even on the primary search engine used in LG's home country, South Korea, there are hundreds of news articles detailing the explosion issues with electronic cigarette batteries such as LG Korea's 18650 battery (the type that exploded here).

36. The first of these articles appear as early as February 2012 and detail a spate of explosions across the world, damaging and burning faces, mouths, hands, legs, and bodies. With respect to administrative action, the U.S. Fire Administration published a report in October 2014 detailing fires and explosions in electronic cigarettes dating back to 2009; the U.S. Dept of Transportation permanently banned e-cigs in checked baggage in 2016, and the FDA has been expressing concern for these dangerous products for years. Finally, based on information and belief, LG Korea has been named, or is about to be named, as a defendant in hundreds of electronic cigarette

explosions across the country, where one of its batteries has caused catastrophic injuries to people across the U.S. and around the world.

37. LG Korea's corporate representative testified that LG Korea has known its batteries were reaching the United States e-cigarette market since 2015 or 2016.

38. With Defendants' knowledge, LG batteries are widely available at electronic cigarette retail stores throughout California, and are also marketed for direct shipment from Amazon, Alibaba, Walmart, and other online retailers. LG has long known, tolerated, and permitted this alternative use of its lithium-ion batteries, as it is a profit driver for LG Korea. Only recently, with the spike in explosions of LG batteries and resulting negative publicity, has LG taken any action to attempt to stem the tide of its batteries reaching California, posting an insufficient "warning" to its website and on battery labels it knew were being removed.

39. The warnings on the batteries themselves were, according to LG Korea's own corporate representative, instituted to protect customers. The "warning" on LG Korea's website, specifically recognizes LG Korea's years-long knowledge that its batteries were and are reaching e-cigarette consumers. Warning on a website falls well below industry standards for informing customers - both pre and post-sale - that the battery they are purchasing specifically to use with e-cigarettes could explode and cause injuries ranging from minor burns to death.

40. LG Korea's own corporate representative also testified that its batteries could and do explode in different contexts. In other words, this issue was not and is not limited to use of LG Korea's batteries with e-cigarettes.

**The Injury**

41. Plaintiff began using e-cigarettes in an effort to quit smoking traditional cigarettes.

42. On or about March 6, 2019, Plaintiff's girlfriend purchased two LG lithium-ion 18650 batteries from Yo Momma's Favorite Vape Shop in Stockton, California and gave the batteries to Plaintiff to use in his Joyetech Espion 200W TC e-cigarette mod device (hereinafter "the Subject Vaporizer").

43. On or about September 23, 2019, Plaintiff was at home sleeping in bed. The Joyetech Espion 200W TC was next to him. His girlfriend was also in the room.

44. Suddenly, Plaintiff's girlfriend heard a noise and smelled a chemical smell. She then saw smoke and flames emanating from the Joyetech Espion 200W TC.

45. Plaintiff and his girlfriend witnessed chemical battery juice shooting out from the Joyetech Espion 200W TC, splashing onto and burning Plaintiff's hands. Plaintiff's clothing and bed sheet were also burned.

46. Plaintiff rushed to a local emergency room where the hospital staff worked to clean the chemical battery juice from his hands. He was diagnosed with third degree burns to his right hand and first degree burns on his left hand. Plaintiff's doctors recommended skin grafts to treat his burns. Plaintiff was informed that he had a high risk of infection and severe scarring.

47. Plaintiff was in severe pain as his wounds healed. After the explosion, Plaintiff's hands were swollen with blisters. He also suffered numbness and scarring.

48. Because of the explosion and resulting injury, Plaintiff was forced to stop working as a chef.

49. As a result of the battery explosion, Plaintiff sustained serious, permanent physical and emotional injuries.

### IV.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS
### STRICT LIABILITY

50. Plaintiff incorporates the preceding paragraphs by reference as if fully stated herein.

51. At all times material to the allegations in this Complaint, Defendant LG Korea was in the business of manufacturing, distributing, exporting, designing, and/or otherwise placing lithium-ion 18650 batteries into the stream of commerce and did design, manufacture, market, and introduce the Subject Batteries giving rise to this lawsuit into the stream of commerce.

52. Defendant LG Korea is strictly liable to Plaintiff for the design, manufacturing, and warning defects in the Subject Batteries because the lithium-ion batteries were not merchantable or reasonably suited for their intended use when they were sold, as new, to Plaintiff. Additionally, the Subject Batteries' condition when sold was the proximate cause of Plaintiff's injuries.

53. The Subject Batteries were defective when they left LG Korea's control, as the designer and manufacturer of the product.

54. The Subject Batteries' and similar batteries' defective nature is evident from the large number of burn cases currently pending against Defendant LG Korea both in California and throughout the country.

55. The Subject Batteries were placed into the stream of commerce without any labeling, markings, instructions, or warnings.

56. At the time Defendant LG Korea placed the Subject Batteries into the stream of commerce, it knew or should have known that retailers and distributors and consumers such as Plaintiff were using 18650 batteries for use in personal vaping devices such as the Subject Vaporizer.

57. At the time the Defendant LK Korea placed the Subject Batteries into the stream of commerce, it knew or should have known that its 18650 lithium-ion batteries were neither designed for use with vaporizers nor safe for such use.

58. Defendant LG Korea never warned Plaintiff that the Subject Batteries could explode or violently fail during their foreseeable and expected use.

59. Defendant LG Korea never warned Plaintiff that the Subject Batteries were not designed to be used with e-cigarettes or personal vaping devices.

60. Defendant LG Korea never warned Plaintiff that the Subject Batteries lacked critical safety components that are regularly incorporated into other, similar batteries.

61. At all relevant times, Defendant LG Korea either designed, manufactured, marketed, distributed, and/or sold 18650 lithium-ion rechargeable batteries with knowledge that they were regularly purchased and used as power sources for vaping devices that have no protection circuitry, battery management systems, positive temperature coefficient thermistors, and/or printed circuit boards.

62. The Subject Batteries were defective and unreasonably dangerous to ultimate users and consumers when designed, manufactured, distributed, and/or sold by Defendants in the following ways:

   a. Being designed and manufactured without any form of internal temperature control or protection circuitry;

   b. Containing manufacturing defects which rendered them unsafe for their foreseeable use;

   c. Being encased in plastic insulation wrappers and having terminal ends of an inferior grade as designed and manufactured, which created the propensity for an external short;

   d. Failing to incorporate protection circuitry or to integrate other safety mechanisms to protect against overcurrent, overtemperature, short circuit, or overload;

   e. Containing inadequate warnings and otherwise failing to contain warnings sufficient to advise Plaintiff of those dangers; and

   f. Being designed and manufactured such that they failed to comply with generally accepted engineering safety standards for such lithium-ion batteries, particularly with respect to external short testing.

63. The above-described defects in the Subject Batteries were the proximate cause of Plaintiff's injuries and damages.

### SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS
### NEGLIGENCE

64. Plaintiff incorporates the preceding paragraphs by reference as if fully stated herein.

65. Defendant LG Korea owed a duty to Plaintiff and other users of its products to exercise due care in the design, manufacture, distribution, marketing, testing, and /or sale of the Subject Batteries.

66. Defendant LG Korea was negligent in one or more of the following ways, each of which was a proximate cause of Plaintiff's injuries and damages including:

a. Failing to employ that degree of care which is required of a reasonably prudent designer, manufacturer and seller in the design, manufacture, advertisement, marketing, distribution, sale, and placement into the stream of commerce of the Subject Batteries;

b. Failing to conduct adequate safety testing and inspection of the Subject Batteries, in order to properly determine whether they were capable of performing their intended use; and

c. Failing to adequately instruct and/or warn consumers and end-users, including Plaintiff, of the potential danger(s) posed by the Subject Batteries, particularly in personal vaping devices;

d. Failing to protect against the dangerous consequences of battery failure during the normal and foreseeable use of these products;

e. Failing to incorporate internal temperature controls and/ or protection circuitry into the Subject Batteries;

f. Failing to incorporate feasible safety features available in similar products in the industry;

g. Placing batteries into the stream of commerce that failed to comply with generally accepted engineering safety standards applicable to lithium-ion batteries;

h. Failing to adequately test the Subject Batteries under conditions in which Defendant LG Korea should have anticipated its products would be used; and

i. Knowingly selling and distributing the Subject Batteries for a use for which they were not designed.

67. As a direct and proximate result of the aforementioned negligent conduct by Defendants, and each of them, Plaintiff suffered injuries as previously alleged. The negligence of Defendants, and each of them, was a substantial factor in causing serious injuries to Plaintiff as previously alleged.

## THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS
## BREACH OF IMPLIED WARRANTY

1. Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs as though fully stated herein.

2. Defendants, and each of them, are, and at all relevant times were, in the business of manufacturing, distributing and selling electronic cigarettes and related products, and held themselves out as having special knowledge regarding said products.

3. At the time Defendants, and each of them, manufactured, marketed, labeled, promoted, distributed and/or sold the subject batteries, Defendants knew of the intended use and/or reasonably foreseeable use of the subject batteries, knew or had reason to know that Plaintiff would purchase the subject batteries for the purpose of vaping, and impliedly warranted the subject batteries to be of merchantable quality and safe for such use.

4. Defendants, and each of them, knew or had reason to know that consumers would rely on the skill and judgment of Defendants to select or furnish goods for sale that were suitable for that purpose and safe for such use.

5. Consumers, like Plaintiff, relied on the skill, judgment, knowledge, and representations of Defendants, and each of them, in purchasing and using subject batteries in the intended and/or reasonably foreseeable manner.

6. As a direct and proximate result of the breach by Defendants, and each of them, Plaintiff purchased and used the subject batteries as intended and/or reasonably foreseeable, which directly and proximately caused Plaintiff's injuries as previously alleged. The breach of implied warranty by

Defendants, and each of them, was a substantial factor in causing the injuries to Plaintiff as previously alleged.

## FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW

1. Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs as though fully stated herein.

2. California Business & Professions Code § 17200 ("Unfair Competition Law" or "UCL") precludes unfair competition: i.e. the employment of any unlawful, unfair, or fraudulent business acts or practices; and any unfair, deceptive, untrue or misleading advertising (Cal. Civ. Code § 17500). This prohibition extends to any act, omission, or conduct affecting consumers within the State of California.

3. Upon information and belief, Defendants, and each of them, have designed and continue to design, manufacture, market, distribute, sell, and place into the stream of commerce subject batteries purchased and used across California. Defendants, and each of them, have failed, and continue to fail, to disclose and conceal the serious safety hazards and risks posed by the subject batteries.

4. Upon information and belief, Defendants, and each of them, have been and remain obligated to disclose the material safety hazards and risks because reasonable consumers expect subject batteries to be safe for the intended and reasonably foreseeable use for vaping. In failing to disclose this significant safety and potentially life-threatening defect known to Defendants, but not to reasonable consumers like Plaintiff, Defendants engaged in, and continue to engage in, unfair and fraudulent conduct under Cal. Bus. & Prof. Code § 17200.

5. As a result of Defendants' violations of the UCL, Plaintiff has suffered injury and is entitled to appropriate equitable relief, including injunctive relief, and monetary relief in the form of restitution and interest. Plaintiff is also entitled to recover penalties, as well as an award of attorneys' fees, costs, and expenses for prosecuting this action.

# V. DAMAGES

68. Plaintiff incorporates the preceding paragraphs by reference as if fully stated herein.

69. As a direct and proximate result of the joint and combined tortious acts, negligence, tortious omissions, and breaches of warranty by Defendants set out herein, the Plaintiff sustained serious personal injuries, permanent impairment, and other damages.

70. Plaintiff is entitled to recover damages for his medical expenses incurred, past, and future; for his lost wages, past and future; for his permanent impairment, permanent scarring, and loss of sensation; disability; diminished earning capacity, if any; physical, mental, and emotional pain and suffering, past and future and for his other damages.

71. As Defendant LG Korea is liable to Plaintiff under one or more of the alternative claims above, and because combined and joint actions directly, concurrently, and proximately caused Plaintiff's injuries and Plaintiff's other damages, Plaintiff requests that he be awarded all damages that a jury deems just and equitable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

(a) That the Court issue service of process to Defendants as authorized by law;

(b) That Defendants Answer this Complaint as provided by law;

(c) That Plaintiff have a trial by jury;

(d) That Plaintiff recover from Defendants for all damages, economic and non-economic, tangible and intangible, general and special, as allowed by California law and set forth above;

(e) That all costs be taxed against Defendants; and

(f) That the Court awards such other and further relief, as it shall deem just and appropriate.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 9, 2021                    Respectfully Submitted,

*[signature: Angela N.]*
_____
William A. Levin
Angela J. Nehmens

*Attorneys for Plaintiff*